ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| OFICINA DEL PROCURADOR DE LAS PERSONAS DE EDAD AVANZADA (OPPEA) <br><br> Parte Recurrida <br><br> v. <br><br> DEPARTAMENTO DE LA VIVIENDA <br><br> Parte Recurrente | TA2025RA00365 | *REVISIÓN ADMINISTRATIVA* procedente de la Oficina del Procurador de las Personas de Edad Avanzada <br><br> Caso Núm.: 2024-006 OC <br><br> Sobre: Querella |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 20 de abril de 2026.

Comparece ante *nos*, el Departamento de la Vivienda (Departamento o recurrente) y nos solicita que revisemos una *Resolución y Orden* emitida y notificada el 19 de septiembre de 2025, por la Oficina del Procurador de las Personas de Edad Avanzada (OPPEA o recurrida). Mediante el referido dictamen, la parte recurrida declaró *Ha Lugar* la *Querella* e impuso una multa de $1,000.00 a la parte recurrente.

Por los fundamentos que exponemos a continuación, se *confirma* el dictamen recurrido.

### I.

El 11 de diciembre de 2024, la OPPEA presentó una *Querella* en contra del Departamento por una violación a la *Ley del Procurador de las Personas de Edad Avanzada del Estado Libre Asociado de Puerto Rico*.[1] En la misma, arguyó que el 9 de julio de 2024, la Unidad de Protección y Defensa de la OPPEA visitó la Égida

---

[1] Ley Núm. 76 de 24 de julio de 2013 (1 LPRA sec. 721).

Jardín del Atlántico porque recibió unos referidos sobre una situación que allí ocurría. Manifestó que, durante su visita, varios adultos mayores le indicaron que la Égida Jardín del Atlántico estaba en pésimas condiciones, que no tenían personal de mantenimiento, que el trato de la administradora era hostil, que los elevadores casi nunca funcionaban, que no contaban con guardia de seguridad, entre otras situaciones. Indicó, además, que los adultos mayores informaron que no contaban con el subsidio federal, que tenían problemas de aguas negras y que las alarmas de incendio se mantenían activadas.

Asimismo, señaló que el 12 y 17 de julio de 2024, envió mediante correo electrónico a la Secretaria Auxiliar de la Secretaría de Subsidio dos (2) referidos que informaban la situación que ocurría en la Égida Jardín del Atlántico y concedió un término de treinta (30) días para notificar la acción tomada. Así, expresó que el Departamento no cumplió.

Así las cosas, el 7 de febrero de 2025, la parte recurrente presentó una *Comparecencia Especial.* Esgrimió que, el 12 de octubre de 2023, suscribió el contrato C.A.S.A. Núm. 2024-000061 con el Jardín del Atlántico Limited Partnership, entidad propietaria de la Égida Jardín del Atlántico, bajo el Programa de Subsidio de Arrendamiento y Mejoras para Vivienda a las Personas de Mayor Edad con Ingresos Bajos al amparo de la Ley para el *Subsidio de Arrendamiento y Mejoras de Vivienda para Personas de Mayor Edad con Bajos Ingresos,* el cual estaba vigente hasta el 11 de octubre de 2028.[2] Así pues, planteó que la Égida Jardín del Atlántico no estaba adscrita a la agencia y dispuso que no administraba los proyectos residenciales, sino que su rol era proveer un subsidio a los

---

[2] Ley Núm. 173 de 31 de agosto de 1996 (17 LPRA sec. 1491).

residentes y observar que el proyecto cumpliera con los términos del contrato.

Además, destacó que, con relación a los dos (2) referidos enviados por la OPPEA el 12 y 17 de julio de 2024, informó que enviaría una comunicación al dueño del proyecto. Afirmó que, el 20 de agosto de 2024, notificó a la recurrida que el 6 y 19 de agosto de 2024, un trabajador social e inspectores del Departamento visitaron la égida e identificaron varias deficiencias en las facilidades del proyecto. Finalmente, resaltó que fue diligente en atender los referidos cursados por la OPPEA y que proveyó la información solicitada; por lo cual, solicitó la desestimación de la *Querella* por academicidad.

Así las cosas, el 6 de marzo de 2025, la parte recurrente presentó una *Segunda Comparecencia Especial.* En la misma, adujo que el 9 de enero de 2025, envió una comunicación al dueño de la Égida Jardín del Atlántico mediante la cual solicitó información sobre la adquisición de un generador eléctrico. Indicó, además, que el 31 de enero de 2025, el dueño de la Égida Jardín del Atlántico informó que el generador sería instalado el 14 de febrero de 2025. Asimismo, coligió que había realizado una inspección a la Égida Jardín del Atlántico para tomar conocimiento de las deficiencias y documentar los aspectos que podrían constituir violaciones contractuales.

El 10 de marzo de 2025, la OPPEA emitió una *Orden y Citación* mediante la cual determinó que, en esa etapa de los procedimientos, no procedía la solicitud de desestimación. Subsiguientemente, el 22 de abril de 2025, se celebró una vista administrativa. Así, el 8 de mayo de 2025, la parte recurrida presentó una *Querella Enmendada.* Posteriormente, el 22 de mayo de 2025, la OPPEA presentó una *Moción en Cumplimiento de Orden Presentando Informe* a la cual anejó un *Informe de Hallazgos* actualizado.

El 13 de junio de 2025, el Departamento presentó una *Contestación a Querella Enmendada y Solicitud de Desestimación.* Luego de varios incidentes procesales, el 29 de julio de 2025, la parte recurrente presentó un documento titulado *Resultado de Re-Inspección Proyecto Jardín del Atlántico-Aguadilla.* El 27 de agosto de 2025, se llevó a cabo una Vista Administrativa. En la misma, la OPPEA señaló que algunos de los hallazgos se corrigieron, pero otros permanecían.

Consecuentemente, el 18 de septiembre de 2025, notificada el 19 de septiembre de 2025, la OPPEA emitió una *Resolución y Orden* mediante la cual declaró *Ha Lugar* la *Querella.* Determinó que, el Departamento no tomó acciones afirmativas inmediatas para exigir al dueño de la Égida Jardín del Atlántico el cumplimiento de las cláusulas del contrato que suscribió para que los adultos mayores obtuvieran el subsidio. Razonó que, la parte recurrente no actuó con diligencia previo a los referidos enviados por la recurrida. Indicó, además, que el Departamento incumplió con su responsabilidad de tomar acciones inmediatas, esto a pesar de conocer el incumplimiento por parte del dueño de la Égida Jardín del Atlántico. Añadió que, la parte recurrente incumplió con sus responsabilidades contractuales y reglamentarias, falló en tomar acciones oportunas e inmediatas al conocer las deficiencias informadas en los referidos y en sus propias inspecciones. Por consiguiente, impuso una multa de $1,000.00 y ordenó supervisar periódicamente y asegurar el cumplimiento de la Égida Jardín del Atlántico con sus obligaciones contractuales.

Inconforme, el 9 de octubre de 2025, el Departamento presentó una *Moción en Solicitud de Reconsideración.* Así, el 27 de octubre de 2025, la OPPEA emitió una *Resolución en Reconsideración.* Inconforme aun, el 25 de noviembre de 2025, la

parte recurrente compareció ante *nos* y alegó la comisión del siguiente error:

> Erró la OPPEA al declarar "Ha Lugar" la Querella presentada en el caso 2024-006 OC e imponer al DV una multa de $1,000, dado a que esta no se basó en evidencia sustancial y constituye un claro abuso de discreción.

El 12 de diciembre de 2025, emitimos una *Resolución* concediéndole un término a la parte recurrida para fijar posición al recurso. Ese mismo día, emitimos una segunda *Resolución* ordenándole al Departamento a que elevara el expediente original correspondiente al recurso en un término de diez (10) días. El 20 de febrero de 2025, la parte recurrida presentó una *Oposición a Recurso de Revisión Administrativa*. Asimismo, el 12 de marzo de 2026, el Departamento presentó un *Alegato Suplementario*. Contando con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

## II.

### A. Revisión judicial de las determinaciones administrativas

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, (3 LPRA sec. 9601 *et seq.*) (LPAU), se creó a los fines de uniformar los procedimientos administrativos ante las agencias. Consecuentemente, desde la aprobación del procedimiento provisto por la LPAU, los entes administrativos están precisados a conducir sus procesos de reglamentación, adjudicación y concesión de licencias y permisos de conformidad con los preceptos de este estatuto y el debido proceso de ley. *López Rivera v. Adm. de Corrección*, 174 DPR 247 (2008).

La Sección 4.2 de la LPAU, dispone que las decisiones administrativas finales pueden ser revisadas por el Tribunal de Apelaciones. (3 LPRA sec. 9672). La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para

asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Simpson, Passalacqua v. Quirós, Betances*, 214 DPR 370 (2024). Véase, además, *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581 (2020); *Empresas Ferrer, v. A.R.Pe*, 172 DPR 254 (2007). Es decir, la revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. *Voilí Voilá Corp., et al. v. Mun. Guaynabo*, 213 DPR 743 (2024). A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Íd.* Así, la revisión judicial constituye el recurso exclusivo para revisar los méritos de una decisión administrativa sea esta de naturaleza adjudicativa o de naturaleza informal. *Voilí Voilá Corp., et al. v. Mun. Guaynabo, supra*; *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527 (2006).

Es norma reiterada que las decisiones de los organismos administrativos están revestidas de una presunción de regularidad y corrección. *Transp. Sonell v. Jta. de Subastas ACT*, 214 DPR 633 (2024); *OCS v. CODEPOLA*, 202 DPR 842 (2019). Esto debido a que, mediante esta norma se reconoce el peritaje del que gozan los organismos administrativos en aquellas materias que le han sido delegadas por ley. *OCS v. Universal*, 187 DPR 164 (2012); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012).

Nuestro máximo Foro ha establecido que, al ejercer la revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación

de la prueba. *Voilí Voilá Corp., et al. v. Mun. Guaynabo, supra; Otero v. Toyota,* 163 DPR 716 (2005).

Cónsono con lo anterior, la sección 4.5 de la LPAU establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". (3 LPRA sec. 9675). Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que los tribunales no pueden extender un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente, contrarias a derecho. *Super Asphalt v. AFI y otro,* 206 DPR 803 (2021); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117 (2019).

Sin embargo, la citada Sección 4.5 de la LPAU, *supra*, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía,* 201 DPR 26 (2018). Por ende, los tribunales deben otorgar amplia deferencia a las decisiones de las agencias administrativas. Esto, en virtud de la experiencia y pericia que se presume que tienen esos organismos para atender y resolver los asuntos que le han sido delegados. Sin embargo, a la luz de *Loper Bright Enterprises v. Raimondo*, U.S., 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024) y *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR ___ (2025), al revisar las conclusiones de derecho los tribunales pueden apoyarse, como lo han hecho desde el inicio, en las interpretaciones de las agencias.

Así pues, son las agencias las que tienen la responsabilidad de aplicar ciertas leyes. Sin embargo, tales interpretaciones "constituyen un acervo de experiencias y criterios informados a los

cuales los tribunales y los litigantes bien podrán recurrir a modo de guía" de conformidad con la APA; y no avalar ciegamente, como se solía hacer en el pasado. *Vázquez v. Consejo de Titulares, supra.* El foro judicial será quien deberá resolver todas las cuestiones de derecho pertinentes, las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y la revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente. *Íd.*

Lo anterior responde a la vasta experiencia y pericia que presumiblemente tienen estos organismos respecto a las facultades que se les han delegado. *Otero Rivera v. USAA Fed. Savs. Bank,* 214 DPR 473 (2024); *González Segarra et al. v. CFSE,* 188 DPR 252 (2013).

Por lo tanto, al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Empresas Ferrer v. ARPe, supra,* pág. 264.

En esta tarea, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Otero Rivera v. USAA Fed. Savs. Bank, supra*; *Asoc. Fcias v. Caribe Specially et al. II,* 179 DPR 923 (2010). Mientras que, las determinaciones de hecho se deben sostener si las mismas se basan en evidencia sustancial que surja de la totalidad del expediente administrativo, *Rolón Martínez v. Supte. Policía,* 201 DPR 26, *supra,* las determinaciones de derecho serán revisadas en

su totalidad. Sección 4.5 de la LPAU, *supra*; Torres *Rivera v. Policía de PR*, *supra,* pág. 627.

Así pues, los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. *Vázquez v. Consejo de Titulares, supra.* Pero principalmente, los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua. *Íd.* Así, reiteramos que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. *Íd.* Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos.

### B. Imposición de multas

La Sección 7.1 de la LPAU (3 LPRA sec. 9701) establece que:

[t]oda violación a las leyes que administran las agencias o a los reglamentos emitidos al amparo de las mismas podrá ser penalizada con multas administrativas que no excederán de cinco mil (5,000) dólares por cada violación. En caso de que la ley especial de que se trate sólo provea penalidades criminales, el jefe de la agencia, a su opción, podrá radicar una querella administrativa al amparo de esta Sección para procesar el caso por la vía administrativa. Si la ley especial de que se trate dispone una penalidad administrativa mayor a la que se establece en esta Sección, la agencia podrá imponer la penalidad mayor.

Así pues, no existe controversia en torno a la facultad de las agencias administrativas para imponer multas cuando las personas o entidades que realizan actividades reguladas por la agencia se apartan del mandato de ley o de algún reglamento. M. Izquierdo Encarnación, *Introducción al Derecho Administrativo*, Ed. Situm, 5ta ed., 2020, pág. 52. Aun cuando la LPAU ocupa parcialmente el campo respecto a la facultad que tienen las agencias administrativas para imponer multas, nuestro máximo Foro ha reconocido que, mediante ley especial las agencias administrativas pueden imponer una sanción mayor a la dispuesta en la LPAU. Izquierdo

Encarnación, *op. cit.*, pág. 53. Véase, además, *Centro Unido de Detallistas v. Com. Serv. Pub.*, 174 DPR 174 (2008).

Asimismo, el Tribunal Supremo de Puerto Rico ha establecido que: "[s]iempre que la sanción administrativa este fundamentada en evidencia sustancial, no constituya una actuación "ultra vires" y tenga una relación razonable con los actos que se quieren prohibir, los tribunales le brindaran gran deferencia". Izquierdo Encarnación, *op. cit.*, citando a *Comisionado v. Prime Life Partners*, 162 DPR 334 (2004).

### C. Ley Núm. 173-1996

La Ley Núm. 173 de 31 de agosto de 1996, según enmendada (17 LPRA sec. 1491 *et. seq.*), conocida como Ley del "Programa de Pareo Estatal de Arrendamiento para Viviendas de Veteranos y Subsidio de Arrendamiento y Mejoras de Vivienda para Personas de Mayor Edad con Bajos Ingresos (Ley Núm. 173-1996), se creó con el propósito de facilitar y proveer a la población de mayor edad mecanismos adicionales para que puedan tener una vivienda que satisfaga sus necesidades dentro de su limitada capacidad económica. Como consecuencia, se estableció el Programa de Subsidio de Arrendamiento y de Mejoras para Vivienda a las Personas de Mayor Edad con Ingresos Bajos.

Cónsono con esto, el Artículo 3 de la Ley Núm. 173-1996 (17 LPRA sec. 1492), autoriza al Secretario del Departamento de la Vivienda a crear un programa para subsidiar el pago mensual del arrendamiento de la vivienda y de los intereses sobre préstamos otorgados a las personas de mayor edad. El subsidio consistirá en reducir el pago mensual de arrendamiento de la vivienda individual o colectiva y de los préstamos otorgados a las personas de mayor edad o a sus familiares para realizar mejoras a su hogar. *Íd.*

Las disposiciones de la Ley Núm. 173-1996, *supra,* también aplican a los proyectos de vivienda y no solamente a individuos.

Artículo 3-A de la Ley Núm. 173-1996 (17 LPRA sec. 1492-1). A esos efectos, la mencionada ley faculta al Secretario a otorgar todos aquellos contratos que, a su discreción, resulten necesarios para asegurar que todo arrendador de proyecto de vivienda cumpla con los requisitos establecidos en la Ley y en los reglamentos promulgados al amparo de esta. *Íd.*

En sintonía con esto, el Reglamento Núm. 9622 del 21 de noviembre de 2024 conocido como Reglamento Para Establecer Las Normas Del Programa de Subsidio Para El Pago Mensual del Arrendamiento De La Vivienda a Personas De Mayor Edad Con Ingresos Bajos/Según Las Disposiciones De La Ley 173-1996, Según Enmendada (Reglamento Núm. 9622), establece las normas del Programa de Subsidio de Arrendamiento para Vivienda a los Adultos Mayores con Ingresos Bajos.

El Artículo XXVII de dicho Reglamento establece que "[e]l Departamento realizará anualmente un monitoreo al Proyecto para evaluar su cumplimiento con la Ley Núm. 173-1996, las disposiciones de este Reglamento y el contrato C.A.S.A. vigente". Cualquier discrepancia o señalamiento producto del monitoreo realizado al Proyecto deberá ser corregida en un periodo de treinta (30) días a partir de que el Programa verifica todos los señalamientos al Proyecto. *Íd.* Una vez el Programa verifica todos los expedientes y las correcciones de los señalamientos o discrepancias, se emite una certificación de cumplimiento anual. *Íd.*

Asimismo, el Artículo XXVIII del Reglamento Núm. 9622 establece que el incumplimiento de las disposiciones establecidas en el Reglamento o en el C.A.S.A. conlleva la denegación de la solicitud, la suspensión del subsidio o la obligación de devolver cualquier cantidad de subsidio recibido, según corresponda en derecho.

### D. Ley Núm. 76-2013

La Ley Núm. 76 de 24 de julio de 2013, conocida como la Ley del Procurador de las Personas de Edad Avanzada del Estado Libre Asociado de Puerto Rico (Ley Núm. 76-2013), creó la Oficina del Procurador(a) de las Personas de Edad Avanzada. Así, estableció como política pública el garantizar el respeto de los derechos humanos de las personas de edad avanzada, su pleno desarrollo y el ejercicio y disfrute de sus libertades fundamentales. Artículo 4 de la Ley Núm. 76-2013 (1 LPRA sec. 723). Para fiscalizar la implantación de esta política pública y de su cumplimiento por parte de agencias públicas y las entidades privadas se creó la mencionada oficina y el cargo del Procurador(a) de las Personas de Edad Avanzada. *Íd.*

Esta oficina está dotada de funciones educativas, investigativas, fiscalizadoras, de reglamentación y cuasi judiciales, con el propósito de que se investiguen y se provean los remedios y las actuaciones correctivas que sean necesarias ante acciones u omisiones que lesionen los derechos de las personas de edad avanzada. *Íd.* Además, esta oficina está facultada para actuar por sí, en representación de personas de edad avanzada en su carácter individual o como clase para la defensa de sus derechos, así como para aprobar reglamentación para fiscalizar y velar que las agencias gubernamentales y las entidades o instituciones privadas cumplan con la política pública y los objetivos de esta Ley. *Íd.*

Cónsono con la controversia que nos ocupa, la Ley Núm. 76-2013, *supra*, concedió al Procurador(a) la facultad para imponer y cobrar multas administrativas hasta diez mil ($10,000) dólares, así como imponer compensación por los daños ocasionados, incluyendo, entre otros, daños emocionales. Artículo 15 de la Ley Núm. 76-2013 (1 LPRA sec. 734).

**III.**

En el *Recurso de Revisión Administrativa* que nos ocupa, la parte recurrente aduce que erró la OPPEA al declarar *Ha Lugar* la *Querella* e imponerle una multa de $1,000.00, dado a que esta no se basó en evidencia sustancial y constituye un claro abuso de discreción. Examinadas las posturas de las partes, así como los documentos que obran en el recurso y la transcripción de la prueba oral, a la luz del derecho aplicable, concluimos que no se cometió el error señalado.

De una revisión minuciosa del expediente ante *nos* surge que, el 12 y 17 de julio de 2024, la OPPEA envió mediante correo electrónico a la Secretaria Auxiliar de la Secretaría de Subsidio dos (2) referidos que informaban la situación que ocurría en la Égida Jardín del Atlántico y concedió un término de treinta (30) días para notificar la acción tomada. Dicho termino transcurrió y no fue sino hasta el 7 de febrero de 2025, siete (7) meses luego, que la parte recurrente presentó una *Comparecencia Especial.* Mediante esta, dispuso, entre otras cosas, que el 20 de agosto de 2024, notificó a la recurrida que el 6 y 19 de agosto de 2024, un trabajador social e inspectores del Departamento visitaron la Égida Jardín del Atlántico e identificaron varias deficiencias en las facilidades del proyecto.

Así las cosas, el 6 de marzo de 2025, la parte recurrente presentó una *Segunda Comparecencia Especial.* Allí, esbozó que el 9 de enero de 2025, envió una comunicación al dueño de la Égida Jardín del Atlántico mediante la cual solicitó información sobre la adquisición de un generador eléctrico. Indicó, además, que el 31 de enero de 2025, el dueño de la Égida Jardín del Atlántico informó que el generador sería instalado el 14 de febrero de 2025. Asimismo, destacó que había realizado una inspección a la Égida Jardín del Atlántico para tomar conocimiento de las deficiencias y documentar los aspectos que podrían constituir violaciones contractuales.

El 22 de abril de 2025, se celebró una vista administrativa. Posteriormente, el 8 de mayo de 2025, la parte recurrida presentó una *Querella Enmendada*. Así, el 22 de mayo de 2025, la OPPEA presentó una *Moción en Cumplimiento de Orden Presentando Informe* a la cual anejó un *Informe de Hallazgos* actualizado. Luego de varios incidentes procesales, el 29 de julio de 2025, la parte recurrente presentó un documento titulado *Resultado de Re-Inspección Proyecto Jardín del Atlántico-Aguadilla*. El 27 de agosto de 2025, se llevó a cabo una Vista Administrativa. En la misma, la OPPEA señaló que algunos de los hallazgos se corrigieron, pero otros permanecían.

De una revisión del expediente administrativo surge que, la Égida Jardín del Atlántico tenía una serie de hallazgos entre estos: áreas verdes sin podar, aguas negras, deterioro de pintura, ausencia de personal administrativo, entre otros. Además, surge que la parte recurrida visitó la Égida Jardín del Atlántico, entrevistó a varios residentes y realizó dos (2) referidos a la parte recurrente. El Departamento dio seguimiento al dueño de la Égida Jardín del Atlántico y algunos de los hallazgos se corrigieron, pero otros permanecían. Esto, a pesar de haber transcurrido más de un (1) año desde que la parte recurrida visitó la Égida Jardín del Atlántico y envió al Departamento los referidos.

Así pues, al Departamento no haber actuado con inmediatez, a pesar de la política pública del Estado de garantizar el respeto de los derechos humanos de las personas de edad avanzada, su pleno desarrollo y el ejercicio y disfrute de sus libertades fundamentales, Artículo 4 de la Ley Núm. 76-2013, *supra,* la OPPEA emitió la *Resolución y Orden* recurrida. En esta, impuso una multa de $1,000.00 y determinó que la parte recurrente no tomó acciones afirmativas inmediatas para exigir al dueño de la Égida Jardín del Atlántico el cumplimiento de las cláusulas del contrato que suscribió para que los adultos mayores obtuvieran el subsidio.

Así, según establece nuestro ordenamiento jurídico, al ejercer la revisión judicial los tribunales no podemos descartar de forma absoluta la determinación de una agencia, sino que primero tenemos que examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. *Voilí Voilá Corp., et al. v. Mun. Guaynabo, supra; Otero v. Toyota, supra.*

Sin embargo, las determinaciones de hechos de las agencias administrativas tienen a su favor una presunción de regularidad y corrección que debe ser respetada, mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas. Así pues, la parte afectada por las determinaciones de hechos de una agencia debe mostrar la existencia de otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada, para así demostrar que la determinación del organismo fue irrazonable, a la luz de la totalidad de la prueba que tuvo ante su consideración.

A pesar de tener el peso de la prueba, el Departamento no demostró que las determinaciones de hechos no estuvieran basadas en el expediente administrativo o que las conclusiones a las que llegó la OPPEA fuesen irrazonables. Esto, pues, la propia parte recurrente confirmó que desde el 2017 han trabajado en varias ocasiones con el dueño de la Égida Jardín del Atlántico y con el Proyecto Santa Marta, que posee el mismo administrador. El Departamento adujo que, en la Égida Jardín del Atlántico, desde hace ocho (8) o nueve (9) años, ha disminuido la población, que se ha hablado sobre los efectos y deterioro de la Égida Jardín del Atlántico y los participantes que están en el mismo. Además, confirmaron que desde el año 2019 o 2020, el dueño de la Égida Jardín del Atlántico tiene una querella

en HUD por distintas razones y una de estas versa sobre la cuestión del agua. Asimismo, que conocen que la Égida Jardín del Atlántico no está en condiciones y aun así continúan sin suspender los subsidios.

Por lo tanto, la parte recurrente no evidenció que la parte recurrida haya actuado de manera arbitraria, ilegal, irrazonable o fuera del marco de los poderes que se le delegaron. Tanto la LPAU, el Reglamento Núm. 9622 como la Ley Núm. 76-2013, *supra*, permiten la imposición de multas; por lo cual, la multa impuesta no fue irrazonable.

**IV.**

Por los fundamentos antes expuestos, confirmamos el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones